UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61712-CIV-COHN

DORSEY SUTTON,

      Plaintiff,

vs.

FLORIDA DEPARTMENT OF CORRECTIONS,
An agency of the State of Florida, FLORIDA
PAROLE COMMISSION, An agency of the State of
Florida, T.J. HAAS, individually, KATY EDOUARD,
Individually, and BENITO CASAL, individually,

      Defendants.

_____/

**OMNIBUS ORDER REGARDING SUMMARY JUDGMENT MOTIONS**

_____THIS CAUSE is before the Court upon the Florida Parole Commission's Motion for Summary Judgment [DE 138] and Supplement to Motion [DE 194], Defendant T.J. Haas' Amended Motion for Summary Judgment [DE 186], Defendant Benito Casal's Amended Motion for Summary Judgment [DE 187], Florida Department of Corrections' Motions for Summary Judgment [DE 189-192], Plaintiff's Motion for Summary Judgment and Default [DE 193], Defendants' Motions to Strike Plaintiff's Motion and Plaintiff's Affidavit attached to motion [DE 198 and 202], and Defendants' various Motion for Joinder in other Defendant's motions for summary judgment [DE 205, 206, 207, 214, and 215].  The Court has carefully considered the motions, responses and replies thereto, the entire record in this case, and the argument of counsel at a hearing held on November 29, 2007.

**I.  BACKGROUND**

Plaintiff Dorsey Sutton ("Plaintiff") filed an action against Defendants Florida

Department of Corrections ("DOC"), Florida Parole Commission ("FPC"), T.J. Haas, Katy Edouard, and Benito Casal,[1] alleging claims for false arrest and false imprisonment under Section 1983 (Counts I-III) and a claim of vicarious liability against the DOC and FPC under Florida Statute Section 768.28 in Count IV.[2]  Plaintiff alleges he was wrongfully incarcerated on a violation of conditional release for not updating his domicile address for which he served over six months in prison before the Department of Corrections recognized that Plaintiff should have never been placed on conditional release as a first-time felony offender.

## A.  Factual Background

On May 30, 1995, Plaintiff committed certain acts which led to his no contest plea and conviction in state court for assault with a motor vehicle following a car accident. While released on bond in that case, Plaintiff was aboard a vessel that sank resulting in a person's death.  Plaintiff was convicted of a federal felony of knowingly causing an unseaworthy vessel to be taken out to sea resulting in a fatality.  Plaintiff was sentenced by this federal court to 24 months in federal custody, beginning incarceration on January 5, 1998.  On February 3, 1999, Plaintiff was sentenced to 77 months in the state action, to be served concurrent with his federal sentence.  On August 20, 1999, he

---

[1]  Individual Defendant Katy Edouard was never served in this case, despite several extensions and Orders to Show Cause as to why she should not be dismissed [DE 32, 41, and 57]. The fact that she was never formally dismissed from this action was an oversight by this Court.

[2]  The Court previously ruled that the state agencies had waived their Eleventh Amendment immunity by not objecting to removal and seeking to dismiss the case in federal court on other grounds.  See "Order Granting in Part Defendants FDOC and FPC's Motion to Dismiss Amended Complaint," pp. 6-9 [DE 32].

was released from federal custody and transferred to DOC custody to serve the remainder of his state sentence.  The acts which form the basis of the present action concern his conditional release from state custody on June 25, 2002.

Plaintiff first met Defendant T.J. Haas, the classification officer at Everglades Correctional Institution, on March 12, 2002 where Plaintiff was transferred four days prior from Union Correctional Institution[3]  No mention of the type of release was discussed in that meeting.  Plaintiff expressed his intent to move to New York to live with his godparents, living off of his Social Security disability payments and family real estate investments.  Plaintiff's (second) Affidavit, ¶ 16, DE 217-2.

Plaintiff next met with Haas on May 21, 2002, having spent the previous two months filing various grievances regarding calculation of his gain time and post-release placement in New York or local suitable facility.  See Exhibits B-E attached to Plaintiff's Affidavit attached to Plaintiff's Motion for Summary Judgment [DE 193].[4]  At the May 21, 2002 meeting, Haas informed Plaintiff that he was placing him on conditional release due to the federal felony conviction.  Plaintiff's Affidavit, ¶¶ 19-21.  Plaintiff asserted that the federal conviction was not a "prior" conviction as it occurred after the state felony.  Haas told Plaintiff he would have to check with his supervisors in "Tallahassee" and get back to him the next day.  Haas testified in his deposition that the DOC computers

---

[3]  The process of release is supposed to begin 180 days prior to actual release from confinement.  Plaintiff had attended a workshop at Union C.I. regarding release prior to his transfer.

[4]  The version of Plaintiff's Affidavit attached to his motion was not signed. Plaintiff corrected this omission at docket entry 217.

generate a list of inmates that are potential candidates for conditional release.  Both the DOC and FPC manuals did not instruct release officers to consider the dates a prisoner committed his crimes when making a conditional release recommendation.   Statement of Facts in Support of Amended Motion for Summary Judgment by Defendant Haas, ¶¶ 21-22  [DE 186].

After the May 21, 2002 interview with Haas, Plaintiff attempted to meet again with him over the next two weeks, filing requests that he intended to live in New York and seeking clarification of his release status.  On June 4, 2002, Ms. Deborah Graham, transitional assistance specialist at Everglades C.I., notified Plaintiff that he would be placed in a Miami shelter called Beckham Hall.  Eventually, Plaintiff filed a grievance on June 14, 2002, regarding Haas' failure to respond to his requests concerning living arrangements after release.  The grievance was denied on June 20 for procedural reasons.  Exhibit E to Plaintiff's Motion [DE 193-7].

Computer screen prints from the Florida Parole Commission indicate that following the May 21 interview/exam by Haas, the conditional release packet was received by the DOC central office in Tallahassee on June 4, 2002.  DOC Notice of Disclosure [DE 203].  On June 7, 2002, Carl Allen signed the Recommendation for Special Conditions on behalf of the DOC.  Exhibit F to Statement of Facts in Support of Amended Motion for Summary Judgment by Defendant Haas [DE 186].

On June 12, 2002, the DOC submitted the "package" to the FPC.   Additional screen prints indicate that on May 21, 2002, "Additional Inmate Information" was added by Haas following a criminal history check of Plaintiff.  DOC Notice of Disclosure [DE

4

203].  Someone, presumably Haas, added to the file that "NCIC/FCIC reveals prior federal felony commitment and incarceration."  Id., page 6 of 12.   An FPC employee responsible for processing conditional release recommendations, Kiwanis Dickey, reviewed the DOC recommendation on June 13, 2002.  Because the DOC had concluded that there was a prior federal felony commitment, Ms. Dickey did not review the NCIC/FCIC history.  Dickey deposition, p. 127, 131-32 [DE 188-3].  She relied upon the recommendation sent by DOC, established the time period of supervision, and sent the packet to the FPC commissioners for final approval.  Id., p. 133.[5]  On June 19, 2002, two FPC Commissioners ratified the DOC recommendation of conditional release.[6]

On June 21, 2002, Plaintiff met with Haas and was presented with the Certificate of Conditional Release.  Plaintiff refused to sign the certificate, while Haas refused to further discuss the designation.  Plaintiff explained his disability and his support system in New York, and that he lacked a place to live in Miami.  Plaintiff was released on June 25, 2002, given $100, and was driven to Beckham Hall.

Over the next few months, Plaintiff lived at the Homeless Assistance Center in Miami and reported to Katy Edouard, the DOC employee who was his probation officer at the time.  Plaintiff continued to explain to her that he should not be on conditional

_____

[5]  Discovery has revealed that the actual physical "packet" of documentation sent by the DOC to the FPC no longer exists.  Although Plaintiff seeks an adverse inference against Defendants for this destruction, whether inadvertent, intentional, or done pursuant to an adopted document retention policy, the Court allows the substitution of the computer records and the depositions taken with regard to the decision to place Plaintiff on conditional release.  See Deposition of Kiwanis Dickey, p. 125 [DE 188-3].

[6]  An outstanding discovery issue is the Magistrate Judge's Order granting Plaintiff's Motion to Compel, resulting in an order, appealed by the FPC, that the Parole Commissioner who made the formal decision to place Plaintiff on conditional release be deposed as the corporate representative of the FPC.

release.  Although Edouard was sympathetic and told Plaintiff that she was seeking an explanation from her superiors, she did not resolve his claim.  By February 2003, when Plaintiff sought permission to visit his dying sister in Virginia, Edouard was no longer his assigned officer.  Plaintiff did not receive permission and his sister died without Plaintiff being able to visit her.

On March 28, 2003, Defendant Benito Casal, Plaintiff's new probation officer, determined that Plaintiff had violated his conditional release by failing to submit a truthful report regarding his current address.  Violation Report, Exhibit B to Appendix to Plaintiff's Motion for Partial Summary Judgment [DE 67].  A few days prior, Casal conducted a field visit and determined that address Plaintiff submitted on his monthly report was the Veteran's Administration Building.  Casal testified in his deposition that he spoke with a security guard at the building to verify that no one lived in or around the building.  Deposition of Benito Casal, pp. 14-15 [DE 173-6].  Casal then submitted the information he uncovered regarding a possible violation of conditional release to the FPC, which issued an warrant for Plaintiff's arrest.  When Plaintiff made his next monthly report in person on April 8, 2003, Plaintiff was arrested by Miami-Dade officers in his first meeting with Casal.  Plaintiff explained that he was homeless at the time and gave the Veteran's Administration building address as his residence.  Plaintiff alleges that Casal told him: "Guilty or innocent makes no difference.  You're going back to jail today."  Plaintiff's (first) Affidavit, ¶ 6.

On May 8, 2003, an FPC administrative judge found Plaintiff guilty of the conditional release violation.  After being transferred twice to different correctional institutions within Florida, Plaintiff filed a Petition for Writ of Habeas Corpus on October

24, 2003.  Plaintiff's (second) Affidavit at ¶ 24.  Before any court action could be taken, on October 28, 2003, additional inmate information was considered by the Florida Parole Commission.  Kiwanis Dickey testified that a parole examiner requested her to review whether Plaintiff had a prior felony commitment.  Dickey Deposition at p. 136. She ran an NCIC/FCIC history and contacted prison officials at the federal prison in Petersburg, Virginia, determining that Plaintiff in fact did not have a <u>prior</u> prison commitment, and was therefore not eligible for conditional release.  <u>Id.</u> at 138, 139; DOC Notice of Disclosure, p. 11 of 12.  Plaintiff was released from custody on October 31, 2003.  <u>Id.</u> at ¶ 26.  In the FPC's Amended Response to Plaintiff's Request for Admissions, the FPC admitted that Plaintiff was not in fact eligible for conditional release supervision in June, 2002.  Appendix, Exhibit F to Plaintiff's Motion [DE 68].

Plaintiff alleges that he suffered significant damages due to his false imprisonment in addition to the extra six months of incarceration, including the inability to visit his dying sister, his loss of various family real estate properties, and being forced to live homeless in Miami-Dade County.

### B.  Procedural Background

Plaintiff previously moved for partial summary judgment seeking a finding of liability as to the FPC and/or the DOC for the incorrect initial designation of conditional release in June, 2002.  On April 4, 2007, this Court denied the motion, stating that: "[t]he admission that the FPC mistakenly placed Plaintiff on conditional release does not automatically subject the FPC to liability under Fla. Stat. § 768.28. . . ." Order at p. 5 [DE 118].  The Court noted that Plaintiff must still prove some wrongful or negligent act by an employee of the FPC (or FDOC).  <u>Id.</u> at 4.

Defendant DOC also previously moved for partial summary judgment that it "is not responsible for placing the Plaintiff on the Conditional Release Program," and that it is "immune from suit as a result of merely taking custody of the Plaintiff pursuant to an Order from FPC which was regular on its face and issued by a legal body having authority to issue said Order."  Defendant's Motion, "Wherefore" clause at p. 6 [DE 104]. DOC argued then and continues to argue now that it merely makes recommendations to the FPC, which in turn has the legal responsibility to set release conditions, if any, upon prison releasees.  See Department of Corrections v. Williams, 901So.2d 169, 170 (Fla. Dist. Ct. App. 2005).

The Court denied the motion because discovery was not complete.  The Court noted that it previously rejected the agency immunity argument.


## II.  DISCUSSION

All parties have moved for some form of summary judgment.   The claims at issue are Section 1983 federal claims against DOC Classification officer T.J. Haas for false imprisonment and against DOC parole officer Benito Casal for false arrest.  In addition, Plaintiff sues under Florida Statutes § 768.28 in tort for false imprisonment against both the DOC and the FPC for the tortious acts of their employees.   The individual defendants seek summary judgment based upon qualified immunity.

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could

reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

If the evidence advanced by the non-moving party "is merely colorable, or is not

significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at

249-50.

### B.  Qualified Immunity

Defendants Haas and Casal assert that their actions in this case are protected by

qualified immunity.  The doctrine of qualified immunity shields law enforcement officers

and public officials from lawsuits where the officers were acting within their discretionary

authority, unless the officers both (1) violated a constitutional right and (2) the right was

clearly established such that it was clear to a reasonable officer that the conduct in

question was unlawful in the situation confronted by the officer.  Saucier v. Katz, 533

U.S. 194, 201–02 (2001); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once officers prove that they acted within their discretionary duty, "the burden shifts to

the plaintiff to show that qualified immunity is not appropriate."  Vinyard, 311 F.3d at

1346.  In other words, the plaintiff must prove both that there was a violation of a

constitutional right and that the right was clearly established.

When conducting a qualified immunity analysis at the summary judgment stage, a

court "must take the facts in the light most favorable to the party asserting the injury."

Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (citing Saucier, 533 U.S.

at 201).  The court thereby eliminates disputed issues of fact and takes the plaintiff's

best case.  Qualified immunity is an immunity from suit, designed "to 'avoid excessive

disruption of government and permit the resolution of many insubstantial claims on

summary judgment.'"  Saucier, 533 U.S. at 202 (quoting Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982)).  Accordingly, it is preferable to resolve qualified immunity issues at the summary judgment stage whenever possible.

The Supreme Court in <u>Saucier</u> emphasized that a court must address the elements of qualified immunity in the proper sequence.  First, a court must determine whether officers violated a constitutional right.  If they did not, then the court's inquiry ends and the officers are entitled to qualified immunity.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201.

If there was a violation of a constitutional right, then the court must determine if the right was clearly established.  "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  <u>Id.</u> at 202 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  The Court's inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  <u>Id.</u> at 201.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

<u>Id.</u> at 205.

Accordingly, in order to determine whether officers violated clearly established rights, courts must determine "whether the state of the law . . . gave [the officers] fair warning that their alleged treatment . . . was unconstitutional."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002).  "The applicable law is clearly established if the preexisting law

dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (alteration and internal quotes omitted). "It must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004).

The Court of Appeals for the Eleventh Circuit has provided three general means by which a court can determine whether § 1983 defendants had "fair warning." First, courts can "look to see whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law." Id. at 1250 n.6; see, e.g., Evans, 407 F.3d at 1283 (holding that "degrading and forceful manner of . . . strip search" could not have been considered reasonable under Fourth Amendment by any objectively reasonable police officer). In such circumstances, the constitutional or statutory violation must be so obvious that prior caselaw is unnecessary. See Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

"Second, if the conduct is not bad enough that it violates a constitutional provision on its face, [courts] look to case law that can be applied broadly to a number of factual situations." Kesinger, 381 F.3d at 1250 n.6. "[B]roader, clearly established principle[s]" may "control the novel facts" in a particular situation. See Mercado, 407 F.3d at 1159 (citing Hope, 536 U.S. at 741). "These principles may give notice to officers, provided that the decisions clearly apply to the situation at hand. The

'reasoning, though not the holding' of prior cases can also send 'the same message to reasonable officers' in novel factual situations."  Id. (quoting Hope, 536 U.S. at 743).

"Third, and finally, if no broad case law is applicable, [courts] turn to case law precedent that is tied to the facts."  Kesinger, 381 F.3d at 1250 n.6.  "Any case law that is 'materially similar' to the facts in the case at hand must pre-date the officer's alleged improper conduct and 'truly compel the conclusion that the plaintiff had a right under federal law.'"  Mercado, 407 F.3d at 1159 (quoting Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)).

<u>2.  Haas' actions</u>

Plaintiff claims that Haas unlawfully imprisoned him by placing him on conditional release.  This deprivation of liberty is a violation of a constitutional right.   However, it is a much closer question if Plaintiff's constitutional right not to be placed on conditional release in this case was clearly established, though Haas was acting within his discretionary authority when conducting the pre-release investigation to determine release status.  Haas makes several arguments in support of summary judgment on qualified immunity.  First, he argues that he only makes recommendations to his DOC superiors, who forward his recommendation to the FPC for the formal decision.  Second, he argues that after following all proper DOC procedures, he simply made a mistake in that it was not clear that the prior federal prison commitment was in fact a later crime and sentence as compared to the state sentence Plaintiff was completing.  The NCIC criminal history report he reviewed did not include the date of offense.  In Haas' view, Plaintiff in fact served a prior felony commitment for the federal offense, although the state offense occurred first.

Plaintiff argues that qualified immunity is not appropriate because Haas refused to investigate Plaintiff's claim that he was not in fact eligible for conditional release, and for refusing to investigate the fact that Plaintiff had family support to live out of state. Plaintiff also argues that Defendants rely on outdated Eleventh Circuit precedents overturned by the U.S. Supreme Court regarding the level of similarity of the prior case law and the establishment of the constitutional rights.

Plaintiff also relies on a state court decision initially issued on April 26, 2002 (rehearing denied on June 3, 2002), Gove v. FPC, 816 So.2d 1150, 1153 (Fla. Dist. Ct. App. 2002), which held that the FPC impermissibly found a resentence after an escape as a prior felony commitment to justify conditional release.  Defendants assert that Gove involved a "split sentence" situation, not a multiple sentence situation such as Plaintiff's case.  Either way, Gove did not become controlling case law until rehearing was denied on June 3, 2002, after Haas' alleged unlawful actions in this case.

A closer review of the facts in the light most favorable to Plaintiff reveals that the grievances filed by Plaintiff during the critical period between March 12, 2002 and May 21, 2002 did not raise an issue as to conditional release.  Rather, as described above, these grievances relate to calculation of gain time and location of release, not that Plaintiff had a prior felony commitment precluding release.   Moreover, Plaintiff has failed to meet his burden that Haas' actions violated a clearly established right given Plaintiff's prior federal felony commitment.   It was not clear that the conclusion for all reasonable, similarly situated classification officers such as Haas would be that

conditional release placement violated Plaintiffs' federal rights, given the prior-in-time felony commitment served by Plaintiff.[7]

Plaintiff's counsel's moving argument regarding Haas' alleged callousness and wanton disregard for Plaintiff's right to be released without condition is belied by the undisputed facts in the record.  It was not until confronted with Haas' conclusion and then later the FPC decision ( based exclusively upon Haas' recommendation), that Plaintiff specifically raised the issue of his prior felony commitment having been related to a later crime.  To strip Haas of his qualified immunity for this Section 1983 claim under the facts in the record would not be in accord with the U.S. Supreme Court's decisions quoted above.

## 2.  Casal

Defendant Casal also moves for summary judgment on qualified immunity grounds.  For a claim of false arrest, in addition to the above case law, Casal needs only to have "arguable probable cause" to support his arrest of Plaintiff.  The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law."  Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997).

As described above, Casal testified that he attempted to locate Plaintiff at the address he listed on his monthly report and was unable to verify that anyone lived there.

---

[7] Plaintiff's Affidavit, submitted in opposition to Defendants' Motions for Summary Judgment, does allege that during the May 21, 2002 meeting between Haas and Plaintiff, after Haas informed Plaintiff he would be placed on conditional release, Plaintiff orally told Haas that the prior federal felony happened after his state felony and he was not subject to conditional release.  Plaintiff's (second) Affidavit, ¶ 20.

Casal went to the location, discovered that it was the Veteran's Administration Building, spoke with a uniformed security guard who denied the possibility that someone lived outside the building, and confirmed it was an office building.  Defendant also submits the deposition of Iola McCray, an employee working at the VA building, who also stated that no homeless persons lived outside the building at that time, and that if she found out about anyone, she would call the police to have them removed.[8]  Casal then filed the violation report, which was forwarded to the FPC, who issued an order for Plaintiff's arrest.

Plaintiff opposes the motion and moves for summary judgment in his favor because Casal never met with Plaintiff before obtaining the arrest warrant, never spoke with Plaintiff's prior parole officer, told Plaintiff he did not care if he was guilty or not, and adjudged Plaintiff as not homeless because his hair was combed neatly.

On summary judgment, the Court must accept the allegations in Plaintiff's affidavit as true regarding whether Casal told him he was being violated whether or not he was guilty.  However, because Casal had already sought the arrest warrant based upon his field investigation that Plaintiff did not live at the VA address, the contents of the conversation between Casal and Plaintiff are immaterial.   Casal's investigation of the incorrect address provided the arguable probable cause that is needed for finding qualified immunity for Casal.  The statement made to Plaintiff occurred after the warrant was sought, and while if true evidences callousness unbecoming a parole officer, it does

---

[8]  Plaintiff objects to use of this testimony, as it comes over three years after Casal's actions and was not known to Casal at the time he submitted his violation report.  While the Court tends to agree with Plaintiff that one cannot rely on hindsight to judge the reasonableness of the officer's actions at the time, the testimony corroborates Casal's testimony regarding his conversation in 2003 with the security guard.

not legally detract from the conclusion that Casal had arguable probable cause.[9]

Therefore, summary judgment on the defense of qualified immunity is appropriate in

favor of Defendant Casal.

### C.  State law claim against DOC and FPC

As noted above in footnote two, the Court previously ruled that the DOC and FPC

waived their Eleventh Amendment immunity to suit on state claims in federal court.  The

Court also ruled that § 768.28 was a waiver of state sovereign immunity for tort actions.

The tort alleged in the Amended Complaint in Count IV is false imprisonment.

The DOC renews its motion that it does not participate in the final decision whether

to set release conditions, pursuant to Fla. Stat. § 947.1405.  Rather, as described above,

that formal decision is made by the FPC, based upon recommendations by the DOC.  In

this case, Defendant Haas, an employee of the DOC, incorrectly recommended that

Plaintiff be placed on conditional release.  Kiwanis Dickey, the FPC staff person reviewing

Plaintiff's file, relied upon this recommendation without reviewing the NCIC report herself.

Thus, Haas' recommendation for conditional release was passed on by Ms. Dickey of the

FPC to the FPC Commissioners, who adopted the recommendation.

Florida Statute § 947.1405, as amended in 2001, now places significant

responsibility on the DOC to investigate and make recommendations to the FPC, though

the FPC makes the final decision as to conditional release.  Dept. of Corrections v.

Williams, 901 So.2d 169 (Fla. Dist. Ct. App. 2005).  The record testimony in this case

---

[9]  Defendant Casal, of course, also argues that he did not issue an arrest warrant or physically arrest Plaintiff.  The arrest warrant was issued by the Florida Parole Commission, though based solely on Casal's report, and was executed by Miami-Dade police officers.

confirms that the FPC relies, almost without question, upon the information forwarded by the DOC.  Plaintiff asserts that the agencies share blame for the mistake in this case, and both agencies should not avoid liability because the lack of physical records make it difficult to choose which is more culpable.  Plaintiff also asserts that because the Defendants could not produce the precise contents of the information "Packet" provided by DOC to FPC, that an adverse inference should be made by the Court and summary or "default" judgment be entered against these Defendants.

In its written motion, DOC's counsel confuses the Section 1983 individual qualified immunity with the agency's state law liability.  The Court agrees with Plaintiff that the individual's qualified immunity has no bearing on a state law claim under § 768.28. Plaintiff is allowed to alternatively plead that Casal and Haas committed intentional acts which negate qualified immunity, while also pleading state agency liability for employee acts or omissions under state law.

### 1.  Casal's actions and DOC liability

The DOC also argues that the actions of Casal, Edouard and Haas do not, as a matter of law, suffice to maintain a claim of false imprisonment.  The tort of false imprisonment is defined as the unlawful restraint of a person against his will, depriving him of his liberty.  Spears v. Albertson's Inc., 848 So.2d 1176, 1178 (Fla. App. 1st Dist. 2003).  "A plaintiff in a false imprisonment action need not show that force was used in the detention or that he or she orally protested to demonstrate the detention was against his or her will. . . . However, a plaintiff alleging false arrest must show the restraint was unreasonable and unwarranted under the circumstances."  Id.  The specific elements of

the tort of false imprisonment in Florida consist of a intent to cause a plaintiff to be completely restrained against his will.  Florida Civil Jury Instructions, MI 6.1.[10]

However, where an officer makes an arrest pursuant to a warrant that is not void on its face, such act is privileged, and not subject to liability.  That issue of privilege is "ordinarily one of law."  Comments to MI 6.1 of Florida Civil Jury Instructions.  Upon reviewing Casal's actions, he reasonably submitted a report of a conditional release violation to his superiors at DOC who forwarded the report to FPC.  Although it was later determined that Plaintiff should not have been on conditional release, at the time of execution of the warrant, the warrant was valid.   Thus, Casal's actions, as a matter of law, cannot form the basis for Plaintiff's false imprisonment claim.[11]

### 2.  Haas' actions and DOC liability

Turning next to Haas' actions, the Court must further define the elements of a false imprisonment claim.  The Florida Civil Jury Instructions explain that the intent element is met when one "acts for the purpose of causing such restraint or with knowledge that such restraint, will, to a substantial certainty, result from [his] acts."  Florida Civil Jury

---

[10]  Plaintiff cites to a Northern District of Florida cases citing federal appellate cases regarding the common law tort of false imprisonment for Section 1983 purposes.  These elements are similar: (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm.  McCurry v. Moore, 242 F.Supp.2d 1167, 1179 (N.D.Fla.,2002) (quoting Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980)).

[11]  Although Edouard was dismissed in her individual capacity, her actions could still subject DOC to liability under § 768.28.  However, other than listening to Plaintiff's objections to his conditional release status and promising to investigate, even if she failed to investigate, such actions do not meet the elements of a false imprisonment claim.  Edouard did not take any action to cause Plaintiff's false imprisonment, even if the "imprisonment" is broadened to include conditional release status in Miami-Dade County.

Instructions, MI 6.1b.  In this case, there are at least questions of material fact that Haas intended for Plaintiff to be placed on conditional release, even though the FPC makes the final decision.  The causation element is met when one's "acts directly . . . produce or contribute substantially to producing the restraint."  There are questions of fact as to this causation with regard to Haas' recommendations being essentially "rubber-stamped" by the FPC and its staff.  Finally, Plaintiff was not free to leave Miami-Dade County, and eventually after the violation arrest, not free to leave prison.

An issue not briefed by the parties concerns whether Haas' actions as a classification officer would also have some sort of privilege defense to the tort of false imprisonment, as with an arresting officer.  Unlike with Casal, however, the arresting officer analogy is not quite the same.  It was the DOC's responsibility, through Haas, to take the time to investigate Plaintiff's placement on conditional release.  A mistake was clearly made in that investigation and subsequent recommendation.  Therefore, it becomes a question of fact and a defense to liability for which the defendant has the burden, akin to an arrest made without a warrant.  Comment 5 to Florida Civil Jury Instructions MI6.1.  The Court therefore concludes that as to Haas' actions as the basis for the claim under Fla. Stat. § 768.28, summary judgment is not appropriate for either the DOC or Plaintiff.

### 3.  FPC liability

The FPC argues that because the only named state employees, Haas, Casal and Edouard are employees of the DOC, and Plaintiff has not specifically plead which FPC employee's negligence led to his injury, summary judgment in favor of the FPC is

required.[12]  However, it is clear that discovery has revealed the name of Kiwanis Dickey, the FPC employee who reviewed the "packet" sent by DOC during the conditional release review.  Following Ms. Dickey, a Florida Parole Commissioner also reviewed the file and formally made the decision to place Plaintiff on conditional release.

The Court therefore, in its discretion, conforms the pleadings to the evidence presented.  The motions for summary judgment as to Plaintiff's claim against the FPC are denied, as issues of fact remain wherein Plaintiff may be able to prove the elements of false imprisonment as to the FPC through the acts of its employees, Kiwanis Dickey and/or the Florida Parole Commissioner who reviewed the case after Ms. Dickey.  The FPC, like the DOC will have the opportunity to prove the defense of justification for the restraint.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Florida Parole Commission's Motion for Summary Judgment [DE 138] and Supplement to Motion [DE 194] is hereby **DENIED**;

2.     Defendant T.J. Haas' Amended Motion for Summary Judgment [DE 186] and Defendant Benito Casal's Amended Motion for Summary Judgment [DE 187] are hereby **GRANTED**;

---

[12]  The Court incorporates by reference its prior decision distinguishing the ruling in Andrews v. Florida Parole Commission, 768 So.2d 1257 (Fla. Dist. Ct. App. 2000), wherein the Florida court held that quasi-judicial immunity protected the FPC from liability for a mistake in computing a release date for one appropriately on conditional release, leading to his later imprisonment.  This Court ruled that here the FPC acted without jurisdiction to even place Plaintiff on conditional release in the first place.  See Order at docket entry 32, pp. 11-18.

3.    Florida Department of Corrections' Motion for Summary Judgment as to Casal and Edouard [DE 189 and 192] are hereby **GRANTED**;

4.    Florida Department of Corrections' Motion for Summary Judgment as to Haas and as to Conditional Release [DE 190 and 191] are hereby **DENIED**;

5.    Plaintiff's Motion for Summary Judgment and Default [DE 193] is hereby **DENIED**;

6.    Defendants' Motions to Strike Plaintiff's Motion and Plaintiff's Affidavit attached to motion [DE 198 and 202] are hereby **DENIED**;

7.    Defendants' various Motions for Joinder in other Defendant's motions for summary judgment [DE 205, 206, 207, 214, and 215] are hereby **GRANTED**;

8.    Defendants' initial Motions for Summary Judgment as to Haas and Casal [DE 171 and 172] are **DENIED** as moot;

9.    The Court will separately issue an order on the remaining motions regarding discovery issues and remaining schedule.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 4th day of December, 2007.

JAMES I. COHN
United States District Judge

copies to:

All counsel of record